UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA RAMIREZ, ESMERALDA LIZBETH MENDEZ LOZANO, LILIAN CABRERA, ANA ROSA MENDOZA, ALICIA FERNANDEZ, DULCE NIETO, ROSA HERNANDEZ, individually, and on behalf of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CORNERSTONE BUILDING BRANDS, an unknown business entity; PLY GEM WINDOWS, an unknown business entity; PLY GEM PACIFIC WINDOWS CORPORATION, an unknown business entity; PLY GEM RESIDENTIAL SOLUTIONS, an unknown business entity; SIMONTON DOORS & WINDOWS, an unknown business entity; and DOES 1 through 100, inclusive,<br><br>Defendants. | No.  2:21-cv-01017-MCE-JDP<br><br>**MEMORANDUM AND ORDER** |

The seven named Plaintiffs in this lawsuit were employed on an hourly, non-exempt basis by Defendant Ply Gem Pacific Windows Corporation, a manufacturer of home exterior products, in its West Sacramento, California facility.  Plaintiffs initiated the present class action in the Sacramento County Superior Court on April 12, 2021,

1

asserting various wage-and-hour claims under the California Labor Code and a related claim under California's Unfair Competition Law ("UCL"), as set forth in California Business and Professions Code §§ 17200, et seq.  In addition to suing Ply Gem Pacific Windows Corporation, Plaintiffs named several other related business entities, including Cornerstone Building Brands, Inc. and Simonton Doors & Windows, as additional Defendants (collectively referred to as "Defendants" or "Ply Gem" unless otherwise indicated).[1]

After being served with the Summons and Complaint on May 12, 2021, Ply Gem timely removed this matter to this Court on June 8, 2021.[2]  Defendants assert that federal jurisdiction is conferred by the Class Action Fairness Act of 2005, as codified at 28 U.S.C. § 1332(d) ("CAFA").

Presently before the Court is Plaintiffs' Motion to Remand (ECF No. 8), made on grounds that jurisdiction under CAFA is lacking because Defendants have failed to show by a preponderance of the evidence that the total amount in controversy exceeds the sum of $5,000,000 as CAFA requires.  Pls.' Notice of Mot., ECF No. 8, 2:14-16.  As set forth below, Plaintiffs' Motion is DENIED.[3]

## BACKGROUND

According to the Complaint, "Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California," with "this pattern and practice involv[ing], *inter alia,* failing to pay them for all regular and/or overtime wages earned and for missed meal periods and rest breaks in

---

[1] While Plaintiffs originally named Ply Gem Windows and Ply Gem Residential Solutions as additional defendants as well, those entities apparently no longer exist.  See Defs.' Opp., p. 3, n.3.

[2] The two other existing named Defendants, Cornerstone Building Brands, Inc. and Simonton Doors & Windows, consented to that removal.

[3] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

violation of California law." Pls.' Compl., ¶ 41, ECF No. 1-2.  In addition to claiming straight and overtime wage loss stemming directly from these alleged violations, Plaintiffs' Prayer for Relief also seeks one hour of pay at each employee's regular rate of compensation for each workday that a meal period was not provided; one hour of pay at each employee's regular rate of compensation for each workday that a rest period was not provided; statutory penalties for failure "to provide accurate itemized wage statements"; statutory penalties for failure to pay all wages due upon termination; attorneys' fees, interest, costs and expenses, and various forms of injunctive and declaratory relief.  See id., Prayer for Relief ¶¶ 1–58.

In removing the case to federal court, Defendants claim that the prerequisites for CAFA jurisdiction are satisfied, including its requirement that the amount in controversy exceed $5,000,000.  While Plaintiffs' Complaint does not quantify the amount in controversy, Defendants allege that figure must be assessed based on the aggregation of the claims accruing to all potential class members under 28 U.S.C. § 1332(d)(6). Defs.' Pet. For Removal, ECF No. 1, ¶ 12(c).  Defendants argue that accepting Plaintiffs' allegations as true for purposes of removal, more than $5,000,000 is clearly at stake. Indeed, Defendants' Petition for Removal calculates an amount in controversy figure of some $17,749,683, exclusive of attorney's fees.  Id. at ¶ 12(c)(vi).

In now removing to remand, Plaintiffs nonetheless claim that Defendants have not shown by a preponderance of the evidence that the amount in controversy likely exceeds $5,000,000.  According to Plaintiffs, Defendants have "failed[ed] to demonstrate that their amount in controversy calculations are based on actual figures and reasonable assumptions."  Pls.' Mot., ECF No. 8, 1:6-7.

**STANDARD**

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court

"embracing the place where such action is pending." 28 U.S.C. § 1441(a).  There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332.  A district court has federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States."  Id. § 1331.  A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, . . . and is between citizens of different States, [or] citizens of a State and citizens or subjects of a foreign state . . . ."  Id. § 1332(a)(1)-(2).

A defendant may remove any civil action from state court to federal district court if the district court has original jurisdiction over the matter.  28 U.S.C. § 1441(a).  "The party invoking the removal statute bears the burden of establishing federal jurisdiction."  Ethridge v. Harbor House Rest., 861 F.2d 1389, 1393 (9th Cir. 1988) (citing Williams v. Caterpillar Tractor Co., 786 F.2d 928, 940 (9th Cir. 1986)).  Courts "strictly construe the removal statute against removal jurisdiction."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted).  "[I]f there is any doubt as to the right of removal in the first instance," the motion for remand must be granted.  Id.  Therefore, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court.  28 U.S.C. § 1447(c).

## ANALYSIS

Under CAFA, federal district courts have jurisdiction to adjudicate class actions provided that certain conditions are met, including 1) that the proposed class has more than 100 members; 2) that the parties are minimally diverse; and 3) that the amount in controversy in the aggregate exceeds the sum or value of $5,000,000.00.  28 U.S.C. § 1332(d)(2); see also Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1195 (9th Cir. 2015).  As indicated above, in moving to remand Plaintiffs only challenge is the amount in controversy component for jurisdiction under CAFA.

4

For purposes of satisfying the amount in controversy requirement, a defendant asserting CAFA jurisdiction must include in the notice of removal "a plausible allegation that the amount in controversy requirement exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014).  Mere legal conclusions do not suffice; an underlying factual basis must be alleged.  Leite v. Crane Co., 749 F.3d 1117, 1122 (9th Cir. 2014) (citing Gaus v. Miles, 980 F.2d 564, 567 (9th Cir. 1992)), cert. denied, 574 U.S. 934 (2014).  Evidentiary submissions are not required at the time of removal as long as plausible allegations are made.  Ibarra, 775 F.3d at 1197.

When, as here, the claimed amount in controversy is contested by the Plaintiffs, the defense bears the burden of establishing, by "a preponderance of the evidence," that the $5,000,000 threshold has been met.  Rodriguez v. AT&T Mobility Servs. LLC, 728 F.3d 975, 977 (9th Cir. 2013).  It is not enough to offer "mere speculation and conjecture, with unreasonable assumptions."  Ibarra, 775 F.3d at 1197.  Instead, CAFA requires that the removing party, once pressed to do so, support its amount in controversy allegations with real evidence.  See Dart Cherokee, 574 U.S. at 89; Ibarra, 775 F.3d at 1197-98.  The Ninth Circuit in particular has stated that "summary-judgment type evidence" is required for a removing defendant to meet its burden of demonstrating the requisite amount in controversy when challenged.  Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997).

The Court now applies these principles to the factual basis offered by Defendants, made in response to Plaintiffs' assertion that this case is not worth $5,000,000.00, despite Defendants' claim that more than three times that amount is in controversy. Plaintiffs allege that Defendants have failed to include documentary evidence, business records or financial documents to corroborate the claims made by its Human Resources Director, Ms. Anderson.  The Anderson Declaration avers, for example, that there were approximately 936 non-exempt employees who worked at Defendants' West Sacramento facility during the four years preceding the filing of the Complaint, and

extrapolating from that number, estimates a total of some 50,857 pay periods for employees who generally worked between five and six days per week and six hours or more per day. Anderson Decl., ECF No. 1-1, ¶¶ 5-6. Plaintiffs argue there are no spreadsheets or other documents to support these assumptions. Plaintiffs also question the frequency of violations upon which Defendants use these numbers to calculate actual potential damages for amount in controversy purposes. While certain assumptions can be made in this regard, they "cannot be pulled from thin air but need some reasonable ground underlying them." Arias v. Residence Inn by Marriott, 936 F.3d 920, 925 (9th Cir. 2019).

In this Court's view, the assumptions made by Defendants are reasonable. First, the Complaint must be considered. As already indicated above, Plaintiffs allege that Defendants "engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California" that "involved, *inter alia*, failing to pay them for all regular and/or overtime wages earned and for missed meal periods and rest breaks in violation of California law." Pls.' Compl., ¶ 41. Plaintiffs further allege that its class comprises all non-exempt employees of Defendants who worked and resided "within the State of California at any time" between four years prior to the filing of their complaint and the date of judgment. Id. at ¶ 23. Then, Plaintiffs argue that the class so defined did not receive the legally mandated meal and rest periods required by California law. Id. at ¶¶ 77-78, 87-88.

The Anderson Declaration indicates that "according to personnel and payroll data . . . reviewed, Defendants employed a total of approximately 936 non-exempt employees" at their West Sacramento facility, alone. Anderson Decl., ¶ 5. Additionally, in response to Plaintiffs' claim that insufficient supporting documentation to support that figure had been offered, Defendants provided spreadsheets showing the 936 individuals as identified by employee identification number, start date and termination date, if applicable, and hourly rate. Anderson Suppl. Decl., ECF No. 10-1, ¶ 3, Ex. A. The number of workweeks and the hourly rate for each employee are also provided. Id.

Then, with respect to each employee, the total aggregate value of all meal and rest periods encompassed within those time periods, is calculated with a 10 percent reduction to reflect a reasonable number of holidays, vacation days and sick days. Id. Those calculations, according to Ms. Anderson, reveal a total value of meal periods of $4,061,881.00 and rest periods in the same amount.

This data is enough to conclude, contrary to Plaintiffs' argument, that a class of at least 936 has been supported by the evidence.[4] The evidence is also sufficient to identify the aggregate value of all meal and rest periods. Defendants then argue, given Plaintiffs' allegation that it engaged in a "pattern and practice" of denying those breaks, that it is reasonable to assume a violation rate of 20 percent. The Court agrees. See Ibarra, 775 F.3d at 1197 (9th Cir. 2015) ("evidence combined with reasonable deductions, reasonable inferences, [and] other reasonable extrapolations" sufficient to support removal); see also Gipson v. Champion Home Builders, Inc., No. 1:20-cv-00392-DAD-SKO, 2020 WL 4048503 at *6 (E.D. Cal. July 20, 2020) (finding that the defendant's assumed violation of 20 percent was reasonable and noting that "[f]ollowing Ibarra, district courts have found violation rates between 25% and 60% to be reasonable based on 'pattern and practice' and 'policy and practice' allegations."). Given the aggregate values in excess of $4 million for both meal and rest periods, and assuming a relatively conservative 20 percent violation rate as to those numbers, a total amount in controversy of $902,640.22 is reasonable for both items, which when added together exceeds $1.8 million alone. Those numbers are not just "pulled out of the air" as Plaintiffs allege. They are supported by both evidentiary data and applicable case law.

Moreover, the $1.8 million figure is just the beginning. Plaintiffs also allege that they are entitled to both overtime wages and statutory penalties based on the above

---

[4] Although Plaintiffs appear to take issue with whether the Anderson declarations and the spreadsheets they attach meet the requirement that "summary-judgment" type evidence be provided to support the amount in controversy when challenged, such declarations are unquestionably the kind of evidence commonly proffered in summary judgment proceedings. See Ibarra, 774 F.3d at 1197 (to prove amount in controversy, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations.").

violations. Significantly, even when afforded the chance to do so in the course of briefing this motion, none of the seven named Plaintiffs have specifically alleged the frequency of the violations aside from their allegation in the Complaint that they amounted to a "pattern and practice." Given the fact that Plaintiffs have not quantified the amount of overtime (in addition to the regular pay calculations enumerated above) they may be owed, courts have found that overtime rates of one hour per week are in order. See Kastler v. Oh My Green, Inc., No. 19-cv-02411-HSG, 2019 WL 5536198 at *4 (N.D. Cal. Oct. 25, 2019 (finding one hour of unpaid overtime per week to be "a conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations"). This yields, as enumerated in Exhibit "C" of Ms. Anderson's Supplemental Declaration another $676,980.17 in controversy based on overtime rates due for only 30 minutes weekly.

Potential statutory wage penalties pursuant to California Labor Code § 1197.1, as Plaintiffs request in their Complaint (see Prayer for Relief, ¶ 25), are more significant. Section 1197.1 provides for a $100 penalty for each initial pay period in which an employee is unpaid and $250 for each subsequent pay period. Cal. Labor Code § 1197(a)(1)-(2). Even if a violation occurred in only half of the approximately 50,857 pay periods that class members apparently worked, as reduced by ten percent, potential waiting time penalties of more than $6 million are indicated ((936 members X $100) + (24,493 pay periods X $250) = $6,216,850). In addition, to the extent that Defendants failed to provide complete and/or accurate wage statements to class members given all of the above-listed alleged violations, California Labor Code § 226(e)(1) provides for additional penalties of $50 per initial pay period, and $100 for each subsequent pay period, suggesting another $1,470,500 in applicable penalties.

Adding these figures together gives a total amount potentially in controversy of more than $10 million, twice the $5 million threshold needed to satisfy federal jurisdiction under CAFA. And, that figure does not take into account attorney's fees, which are properly considered as an allowable amount in controversy component. See Arias,

8

936 F.3d at 927.  Courts within this circuit have consistently found 25 percent of the potential class recovery (here some $2.5 million) to be an appropriate estimate for such fees.  See Danielsson v. Blood Ctrs. of the Pac., No. 19-cv-04592-JCS, 2019 WL 7290476 at *8 (N.D. Cal. Dec. 30, 2019). That, obviously, would increase the amount in controversy still further to some $12.5 million.

While these calculations are not exhaustive, and do not even include all the categories of potential damage listed by Defendants in opposition to this Motion,[5] they are sufficient for the Court to conclude that Defendants have shown, by a preponderance of the evidence, that the amount in controversy here well exceeds $5 million.  The assumptions utilized by Defendants are not without reasonable basis and Defendants have demonstrated how their figures are derived and cite to appropriate supporting evidence, including six detailed spreadsheets attached to the Supplemental Anderson Declaration that include calculations premised specifically on each of the 936 identified potential class members.  Federal jurisdiction under CAFA is accordingly proper.

## CONCLUSION

For all the above reasons, Plaintiffs' Motion to Remand (ECF No. 8) is DENIED. IT IS SO ORDERED.

Dated:  April 4, 2022

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] Defendants' Opposition papers, which include more detailed data than that initially provided in the Notice of Removal estimate a total amount in controversy of $18,042,584, somewhat more than the original $17,749,683 figure which did not include attorney's fees.  See Opp., 18:13-24, Notice of Removal, ¶ 12(c)(6).

9